[No. F037389. Fifth Dist. June 18, 2001.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF TULARE COUNTY, Respondent;
JOSE ALMARAZ, Real Party in Interest.

## COUNSEL

Phillip J. Cline, District Attorney, Carol B. Turner and Don H. Gallian, Assistant District Attorneys, and Barbara J. Greaver, Deputy District Attorney, for Petitioner.

No appearance for Respondent.

Antonio A. Reyes for Real Party in Interest.

## OPINION

**VARTABEDIAN, Acting P. J.**—California Constitution, article I, section 14, provides in part, "A person unable to understand English who is charged with a crime has a right to an interpreter throughout the proceedings." We are called upon to determine if the failure to follow the procedures regarding noncertified interpreters set forth in California Rules of Court, rule 984.2,[1] in and of itself, violates this constitutional right, justifying the granting of a motion to strike the prior convictions in question.

### BACKGROUND

Real party in interest, Jose Almaraz (hereafter Almaraz), was charged with driving under the influence (Veh. Code, § 23152, subd. (a))[2] and driving while having a blood-alcohol level of .08 or higher (§ 23152, subd. (b)). Alleged as to each of these offenses were three prior convictions of

---

[1]Further references to rules are to the California Rules of Court.
[2]Further statutory references are to the Vehicle Code except as otherwise noted.

driving under the influence within the requisite time period, elevating the charged offenses to felonies. (§ 23550.) In addition, Almaraz was charged with driving when the privilege had been suspended for a prior conviction of driving under the influence. (§ 14601.2, subd. (a).) Five prior convictions were alleged for this count.

Almaraz filed a motion to strike three of the prior misdemeanor convictions, claiming they were constitutionally invalid because the record in those cases did not reflect a voluntary and intelligent waiver of his "constitutional right" to interpretation by a certified court interpreter. In particular, Almaraz claimed he "was not made to understand that the conviction would reflect separate convictions, which would enhance any future incidents."

A hearing was held on the motion to strike. At the hearing, Almaraz's counsel stated he was not disputing the competency of the interpreter and framed the issue to the trial court as a due process failure by the trial court that entered the prior convictions to make the required findings before utilizing a noncertified interpreter.

The instant trial court stated its understanding that the law required the record to show a reason for the use of a noncertified interpreter, but found the prior records did not reflect any discussion of the use of a noncertified interpreter. The trial court granted Almaraz's motion to strike the prior convictions as constitutionally invalid.

The People filed a petition for a writ of prohibition and/or mandate and a request for a stay. We issued an order to show cause and in addition ordered the trial court proceedings stayed pending further order of this court.

### DISCUSSION

■ The People contend the failure to provide a certified interpreter is not a violation of a constitutional right giving rise to a motion to strike. The People concede that a certified interpreter was not used in Almarez's prior misdemeanor cases.

### A. *Proceedings Under the Vehicle Code.*

The Legislature has set forth in section 41403 the procedures for raising challenges to the constitutional validity of certain prior Vehicle Code violations, including the prior Vehicle Code violations in question here. Pursuant to section 41403 the defendant must file a written motion stating with specificity how he or she was deprived of a constitutional right. The court

must hold a hearing. At the hearing, the People have the burden of proving that defendant has suffered the prior conviction. After the People meet their burden, the "defendant then has the burden of proof by a preponderance of the evidence that the defendant's constitutional rights were infringed in the separate proceeding at issue." (§ 41403.) The People have the right to produce evidence in rebuttal. The trial court then makes its findings, striking from the pleadings any prior conviction found to be constitutionally invalid.

We cannot tell from the record before us whether the trial court followed these procedures when it struck the priors here. Still, we are able to review the motion-to-strike proceedings to determine whether the requisite burden was met; if Almaraz did not prove by a preponderance of the evidence that his constitutional rights were infringed in the prior proceedings, the trial court's ruling was erroneous. (§ 41403.)

B.   *Historical Appraisal of Right to Interpreter.*

The right to an interpreter, as a particularly enumerated constitutional right in California, is of relatively recent origin. The right was added as a part of California Constitution, article I, section 14, when the Legislature proposed and the voters adopted constitutional amendments at the 1974 General Election. (Cal. Const., art. I, § 14, added by initiative, Gen. Elec. (Nov. 5, 1974), commonly known as Prop. 7.) As quoted above, the constitutional right is to "an interpreter," with no further elucidation. The purpose of the constitutional right to an interpreter was perhaps best expressed in *People v. Aguilar* (1984) 35 Cal.3d 785 [200 Cal.Rptr. 908, 677 P.2d 1198]: "In the ethnic richness of California, a multiplicity of languages has been nurtured. Historically, many peoples speaking diverse tongues have formed large portions of our population. The people of this state, through the clear and express terms of their Constitution, require that all persons tried in a California court understand what is happening about them, for them, and against them. Who would have it otherwise?" (*Id.* at p. 795.)

The Legislature also had expressed concern about the court interpreter issue in 1973 when it directed the Judicial Council to conduct an extensive investigation of the need for and problems with use of interpreters in the courts. (See Gov. Code, § 68560.) The Judicial Council's report set forth "specific objectives to be achieved by providing adequate interpreter services to non-English-speaking citizens and residents in California." The report resulted in the 1978 adoption of title 8, chapter 2, article 4 of the Government Code, "Court Interpreter Services." (See Gov. Code, § 68560.) As originally enacted, Government Code section 68562 provided in general terms for employment of interpreters based on recommendations of competency from the State Personnel Board. (Former Gov. Code, § 68562, added by Stats. 1978, ch. 158, § 1, p. 388.)

Greater specificity in the certification process was added in 1992, following a report of a Judicial Council Advisory Committee on Court Interpreters appointed by the Chief Justice "to propose actions to the Judicial Council to (1) improve the quality of interpreter services provided to courts, (2) increase the number of available, qualified court interpreters, and (3) provide non-English-speaking persons with increased access to the court system. At the request of the advisory committee, the Judicial Council proposed to the Legislature changes . . . to clarify the law, to create a program to certify court interpreters, and to coordinate programs for interpreter recruiting, training, testing, certification, and continuing education and evaluation." (Gov. Code, § 68560, subd. (d), as amended by Stats. 1992, ch. 770, § 2, pp. 3694-3695.)

That report resulted in the adoption of Government Code sections 68561 and 68562, requiring that Spanish interpreters must be certified, unless good cause is shown for using a noncertified interpreter in a particular instance. The Judicial Council was given the task of adopting the procedures necessary to implement the Government Code sections involving court interpreters. (Gov. Code, §§ 68561, subd. (d) & 68564.)

Responding to the legislative directive, the Judicial Council promulgated rule 984.2, regarding the appointment of noncertified interpreters in criminal proceedings effective January 1, 1996. Rule 984.2 provides detailed procedure to be followed when a noncertified interpreter is used.

When we see that more than 20 years lapsed between adoption of the constitutional right to an interpreter, generally, and the adoption of the detailed procedures in the Rules of Court for the use of noncertified (but nevertheless competent) interpreters, we consider it unlikely that the right encompassed in California Constitution, article I, section 14, includes the right to appointment of a noncertified interpreter only if that appointment is accomplished pursuant to the procedures established in rule 984.2.

C.  *Previous Judicial Consideration of the Right to an Interpreter.*

There are several cases discussing irregularities in the utilization of interpreters; all of those cases arose before promulgation of rule 984.2 and none address the exact question before us.

In *People v. Estrada* (1986) 176 Cal.App.3d 410 [221 Cal.Rptr. 922], there were two interpreters utilized at the defendant's preliminary hearing, one certified, one not certified. On appeal, the defendant claimed it was error to proceed with a noncertified interpreter absent a personal waiver by the defendant. The appellate court noted that there is no requirement in the

Government Code that a certified interpreter must be utilized in every instance, and an uncertified interpreter may be used as long as there is good cause shown for such an appointment. (*Id.* at p. 415.) The appellate court found that "[t]here is no right . . . to a certified interpreter. There is only a right to a competent interpreter . . . . Certification is simply foundational to the interpreter's competence." (*Ibid.*)

██ The failure to administer the required oath to an interpreter is a statutory error. (*People v. Carreon* (1984) 151 Cal.App.3d 559, 579 [198 Cal.Rptr. 843].) The failure to administer the oath to an interpreter does not render the services of the interpreter constitutionally ineffective, nor does it deprive a defendant of the constitutional right to an interpreter throughout the proceeding. (*People v. Mora* (1984) 153 Cal.App.3d 18, 23 [199 Cal.Rptr. 904].)

The use of a "non-listed" interpreter does not result "in the per se use of an unqualified interpreter and a per se denial of defendant's right to confrontation." (*People v. Roberts* (1984) 162 Cal.App.3d 350, 356 [208 Cal.Rptr. 461].)

Although one's constitutional right to an interpreter is infringed when the interpreter is absent during portions of the proceedings (*People v. Chavez* (1981) 124 Cal.App.3d 215 [177 Cal.Rptr. 306]; *People v. Menchaca* (1983) 146 Cal.App.3d 1019 [194 Cal.Rptr. 691]), no case has held that the mere failure to follow procedural requirements, as such requirements existed at the time, violates the constitutional right to an interpreter throughout the proceedings.

D.   *Failure to Follow Procedures in the Temporary Judge Context.*

██ A somewhat analogous situation can occur under constitutional provisions and rules applicable to the use of temporary judges, as discussed in *In re Richard S.* (1991) 54 Cal.3d 857 [2 Cal.Rptr.2d 2, 819 P.2d 843]. "Article VI, section 21 of the California Constitution provides: 'On stipulation of the parties litigant the court may order a cause to be tried by a temporary judge who is a member of the State Bar, sworn and empowered to act until final determination of the cause.' " (*Id.* at p. 861.) Rule 244 amplified this constitutional provision and set forth detailed provisions to be followed when a temporary judge is utilized. The Supreme Court found that failure to adhere to the requirements of the rule was not constitutional error if the underlying constitutional conditions were met. (54 Cal.3d at p. 862.)

E.   *Failure to Follow Rule 984.2 Is Not, Per Se, Constitutional Error.*

██ Rule 984.2 imposes requirements beyond those expressed in California Constitution, article I, section 14. We do not in any manner denigrate

the importance of that rule in ensuring both a competent interpreter and an adequate record of that fact.

However, when we consider the actions of the Legislature in implementing the constitutional right to an interpreter after adoption of that right in 1974, the judicial articulation of the scope of the constitutional right in the decade before promulgation of rule 984.2, and the Supreme Court's treatment of analogous procedural failings in *In re Richard S., supra,* 54 Cal.3d 857, we must conclude that the procedural requirements of rule 984.2 are not an integral part of the constitutional right established in article I, section 14. The failure to follow those requirements alone does not give rise to a constitutional violation.

Here, Almaraz did not claim that the interpreter who was utilized when he pled guilty in the prior proceedings was not competent. To the contrary, he conceded the interpreter was competent. He failed to show below that his constitutional right to an interpreter was infringed.[3]

Almaraz also claimed below that the failure to follow rule 984.2 resulted in a due process violation. Undoubtedly, due process rights may be abridged when a defendant fails to understand a proceeding because no interpreter was provided when such need was earlier established. Nevertheless, Almaraz has failed to show how the failure to follow rule 984.2, standing alone, deprived him of the ability to understand the proceedings and violated fundamental fairness. (*Medina v. California* (1992) 505 U.S. 437 [112 S.Ct. 2572, 120 L.Ed.2d 353].) Rule 984.2 is a nonconstitutional rule of procedure. "[T]he fact that a particular procedure might enhance reliability does not make it one that is constitutionally mandated." (*People v. Holt* (1997) 15 Cal.4th 619, 664 [63 Cal.Rptr.2d 782, 937 P.2d 213].) Improper procedures in the use of an interpreter do not rise to the level of a constitutional violation unless they result in prejudice demonstrating defendant was denied his right to a fair trial.

The trial court erred when it dismissed the prior conviction allegations because Almaraz failed to show that his constitutional rights were infringed in these prior proceedings. Such a showing was required by section 41403.

---

[3]Included in Almaraz's opposition to the petition is a declaration stating facts surrounding his prior convictions and problems he had with the interpreter. His declaration was not before the trial court when it ruled on the motion and cannot be considered here. (*In re Moser* (1993) 6 Cal.4th 342, 352-353 [24 Cal.Rptr.2d 723, 862 P.2d 723].) Our holding does not preclude Almaraz from making a proper motion with an adequate showing; such a showing was not made at the hearing giving rise to the petition here.

## Disposition

We grant the writ of mandate and direct the trial court to vacate its order striking the prior convictions. The previously ordered stay of the proceedings below is lifted.

Levy, J., and Gomes, J.,* concurred.

---

*Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.